DOCKET NO.

16-10536

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

ORLANDO COOPER, Jr.

    Plaintiff-Appellant,

v.

CLP CORPORATION d/b/a MCDONALDS,

    Defendant-Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CASE NO.: 2:13-CV-02152-JEO

BRIEF OF
ORLANDO COOPER, JR

---

Lee Winston
WINSTON COOKS, LLC
505 North 20th Street, Suite 815
Birmingham, Al 35203
(205) 502-0940
Attorney for Orlando Cooper, Jr.
May 3, 2016

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Counsel hereby certifies that the following have an interest in the outcome of this case:

1)      The Honorable John E. Ott – United States Magistrate Judge

2)      Orlando Cooper, Jr. – plaintiff

3)      Lee Winston- counsel for plaintiff

4)      Cooks, Roderick – counsel for plaintiff

5)      CLP Corporation – defendant

6)      Burr & Forman LLP – counsel for defendant

7)      K. Bryance Methany -- counsel for defendant

8)      Amy K. Jordan – counsel for defendant

9)      E. Travis Ramey- counsel for defendant.

10)     Winston Cooks, LLC – counsel for plaintiff

Respectfully submitted,

*/s/Lee Winston*
Lee Winston


## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested.

i

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ......................................................i

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF CONTENTS...........................................................................ii

TABLE OF AUTHORITIES ...................................................................iii

STATEMENT OF JURISDICTION.........................................................iv

STATEMENT OF ISSUES ......................................................................1

STATEMENT OF CASE ........................................................................1

     I.     Course Of Proceedings And Disposition Below...................................1

     II.    Statement of Facts ..................................................................2

     III.   Standard of Review ...............................................................7

SUMMARY OF THE ARGUMENT .......................................................8

ARGUMENT .......................................................................................10

A.    SUMMARY JUDGMENT WAS IMPROPERLY GRANTED
CONCLUSION...................................................................................10

CERTIFICATE OF COMPLIANCE.....................................................17

CERTIFICATE OF SERVICE .............................................................18

# TABLE OF AUTHORITIES

## Cases

B&G Enters., Ltd. v. United States, 220 F.3d 1318, 1322 (11th Cir. 2000)..7

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270, 141 L. Ed. 2d 633 (1998)……………………………………………………..15

Flowers v. S. Reg'l Physician Servs. Inc., 247 F.3d 229, 232 (5th Cir. 2001)

Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S. Ct. 367, 370-71, 126 L. Ed. 2d 295 (1993)…………………………………………………………12

Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1277 (11th Cir.2002)…….12

St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819   (11th Cir. 1999)……………………………………………………8

Thornton v. E.I. Du Pont de Numours & Co., 22 F.3d 284, 288 (11th Cir. 1994)….7

Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1281 (11th Cir. 2003)……………………………………………………………..14

## Statutory Authority

42 U.S.C § 12101 et seq. ……………………………………………2

## Other Authority

The Utility of Strabismus in Adults, George R Beauchamp, MD, Joost Felius, PhD, David R Stager, Sr, MD, and Cynthia L Beauchamp, MD;
http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1447571/..............................2

## STATEMENT OF JURISDICTION

The appeal is from entry of a final judgment on all claims and parties.

Jurisdiction exists under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

**I.     Whether the district court properly granted summary judgment**

## STATEMENT OF THE CASE

### I.     Course of Proceedings and Disposition Below

This case arises out of Orlando Cooper, Jr.'s claim that he was discriminated against with respect to working in a hostile environment because of a strabismus or for having a "lazy eye".   Cooper also contests his termination as violating the Americans with Disabilities Act.

On December 23, 2015, the court entered an order granting summary judgment and dismissing all of the Plaintiff's claims.

### II.     Statement of Facts

Orlando Cooper, Jr. [hereafter "Cooper"] was formerly a cook for one of CLP twenty-one McDonald's Restaurants located in Birmingham, Alabama.

Since birth, Cooper has a condition known as strabismus or "lazy eye".   It is a immutable condition that causes his right eye to wonder.   Cooper's father and grandfather had the same condition.[1]

---

1 Doc 17-2, Cooper Dep. pg 99.   Cooper cannot really see out of the right eye.   Doc. 17-2, pg. 103

1

Strabismus is not an insignificant as one study reflects that one suffers from the condition would trade some years from their life expectancy to be rid of it.2

While giving the appearance of wondering eye, the condition also impacts Cooper ability to see out his right eye.3

In 2013, Cooper became employed by CLP a grill cook.4   While employed (a short ten weeks before he was terminated), Spanda Holmes, the store manager ridiculed Cooper based on his on the appearance of his eye.5

Cooper explained "Like any time she would say something to me, it was in reference to like cockeyed or, you know, <u>it was just always in reference to my eye</u>.   And like I told her you know, it's a way to say things, in this business, because I don't feel like you know, saying that in front of everybody to get your laughs and giggles in, you know, it's not funny because we're in a place of business.6   Cooper was butt of the manager's insults to please an audience of her employees.   "The main comments to me were: You cockeyed ass, you need to work faster. You're too slow.   She's like: You can't see back there, what's wrong?

2 http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1447571/
3  Doc 17-3, pg.3, lines 10-13
4  Cooper had previously worked a few months in 2009 for CLP.   Doc. 17-1 pg.3 ¶10a
5  Doc 26, pg.3.
6  Cooper pg. 98 lines 3-12. (emphasis added).

Like I said, just it was in reference to my eye. It was never about how I moved.   It was mainly jokes toward my eye." Cooper pg. 105 line 14-20.

Holmes made the eye remarks on a daily basis.   "That was an everyday thing." 7   Holmes remarks were witnessed by Cooper Martin another employee. "...I repeatedly heard Ms. Holmes state to Mr. Cooper, "Get your cockeyed ass on it and cook the meat right; Your cockeyed ass can go on and clock out"; Get your cockeyed ass out of my store" 8

On one occasion just before Cooper's termination with orders backed up, Cooper moved from the fryer to help on the grill.   Holmes instructed Cooper:

"I told your cockeyed ass to stay back there.   You don't move where you want to. " 9

Cooper was asked,

Q: "Did anyone else hear her make these comments?'

A: "Everybody in back of the store.   Everybody that—a lot of people laughed, but they didn't find it too funny just because, like I said, all of us were friends.   We didn't too tough try to put each other down, and that the thing.   The managers would put the employees down, and that's you know , like I said, every time I went

---

7 Cooper pg. 115, lines 13-15.
8 17-6, pg. 92, ¶6
9 Cooper pg. 108.

3

to orientation, I still go home and read the rule book like it's nothing—like it's still

something I needed to learn." 10

Cooper explained,

"No it's a respect issue.  If I can give you respect not to say anything
out of the way to you, then as a person as a human being, you should have respect
for me.  And like I said, I've watched my father run many of restaurants in the
Birmingham metropolitan area for many years.  I've never heard my father cuss
at his employees, and he always ran the kitchen. I've never heard him cuss at his
employees. 11

Holmes denies calling Cooper any names.12

Cooper followed McDonald's CLP Corporation's sexual harassment policy.  13

The last page of the policy applies to other forms of harassment.  14  The complaint

procedures state that the employee is to first confront the harasser and asked them

to stop.15  The next step is to report the harassment to the operations manager.16

In compliance with the policy Cooper took both of these steps.

Cooper, the grill cook, unsuccessfully protested being demeaned to Holmes,

his tormentor. "…I asked her, you know, I said Spanada, could you please stop

---

10 Cooper pg. 109.

11 Cooper pg. 113.
12 Doc 17-6  pg. 28
13 Doc. 17-5, pg. 34
14 Doc. 17-5, pg. 36
15 Doc. 17-5, pg.35
16 Id.

calling me   -- I was like saying everybody in here you know I'm cockeyed, you

know, stop calling me by that name.   And if you don't like what I say, stop calling

me by that name.   And if you don't like what I say, you can go home.   Take your

ass home.   She made me clock out. I clocked out.   I mean, she's the boss, I can't

not do what she say.   But like I said, some people use power, you know – they

don't use it for the greater good."17

Cooper worked through the harassment.18  After unsuccessfully

 asking the manager to stop the name calling, Cooper took it upon himself to report

the conduct to Monica Love, the district manager and Holmes's supervisor.    Love

visited the store and Cooper sat down with her.

"We went and sat down at a table and I told her, I was like, Spanada, she

makes comments about my eyes, and I'm not too fond of that.   And she said – and

her exact words, Well, look I will talk to her about it. Your get ready for your shift,

and I'll handle that situation19. Cooper is unaware of Love talked with Holmes but

the verbal abuse continued.20

Holmes, a CLP manager since 1995, received no training regarding on

_____

17 Doc. 17-2 pg. 116.
18 Id.
19 ." Doc 17-3pg. 117.
20   Dco 17-3, pg 118.

5

disability discrimination.21  Holmes was unaware of Americans with Disabilities Act.22.

Holmes made the decision to discharge Cooper. Holmes pg. 11, lines 10-1223.

The decision was not reviewed internally before Cooper was terminated from McDonald's employment.  24

## **Cooper's Termination**

Cooper requested in writing and received permission from Holmes to be off to be with his mother when she was scheduled to give birth.  25

Cooper explained, " … I was fired while I was on my requested days off." Cooper pg. 123. Cooper's mother knew when she was going to the hospital for delivery and he requested the days off.26. Cooper was granted the time off from work to be with his mother in the hospital.   27      At the hospital, Cooper was called by his fellow employee Cornelius Martin , who stated that Ms. Holmes instructed him to relay to Cooper that if he did not come to work in 30 minutes he

---

21 Holmes Dep. Doc. 17-6, pg. 16, lines 13-22, pg. 40 lines 18-23. "Not nothing with no disabilities, no", Holmes Dep. Pg. 14 lines 17-19.
22 Holmes pg. 40, lines 15-17
23 Holmes pg. 11, lines 10-12
24 Holmes, pg. 11, lines 10-12.
25 Cooper pg. 122, 123 lines 5-10
26 Cooper pg. 124
27 Id.

was terminated.28   "She said if I didn't come in in thirty minutes I was fired" 29

Holmes terminated Martin for no call no show.30   No other reason than no call no show factored in Cooper's termination. 31   While Holmes testified that she had no issues regarding Cooper's work performance, on the termination sheet she rated Cooper as a poor performer.

Holmes while denying any name calling, she agrees her management style is too threaten termination. 32

### III.    Statement of the Standard of Review

The grant or denial of summary judgment is reviewed *de novo*. <u>B&G Enters., Ltd. v. United States</u>, 220 F.3d 1318, 1322 (11th Cir. 2000); <u>Thornton v. E.I. Du Pont de Numours & Co.</u>, 22 F.3d 284, 288 (11th Cir. 1994). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Whatley v. CNA Ins. Co.,</u> 189 F.3d 1310, 1313 (11th Cir. 1999). The court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. <u>St. Charles Foods, Inc. v. America's Favorite Chicken Co.</u>, 198 F.3d 815, 819

---

28 Cooper pg. 125.
29 Cooper pg. 125, lines 4-8.
30 Holmes pg. 23, lines 21-22.
31 Holmes pg. 26, lines 11-13.
32 Holmes, pg. 44, lines 1-9.

(11th Cir. 1999).

## SUMMARY OF THE ARGUMENT

On the summary judgment motion, the Court dismissed the case.   Daily name calling abuse – even for a short employment period—should not be tolerated or allow the employer to escape all liability without a trial.    Continual berating your employee by calling him "cockeyed" or "cockeyed ass" – is a clear reference to an immutable physical condition Cooper that is protected under the Americans with Disabilities Act.   Cooper was daily abused based on this moniker by the store's general manager, the highest ranking corporate official in the restaurant.

In the larger context of the prohibitions of the nation's employment laws banning discrimination, if Cooper was subject to daily ridicule on based on characteristic of race or sex swift condemnation would presumably follow. Disabilities or the perceived appearance of physical disabilities should not be treated any differently.

In dismissing the case the Court applied too high of a legal standard to the hostile environment claim.   Because the verbal attacks were not physically threatening nor did they interfere with Cooper's job performance except when he was sent home after protesting the treatment, the defendant's motion for judgment

without any trial was granted.   The legal standard applied at the summary judgment was too onerous.

An employee does not have a nervous breakdown or stop doing their job before the challenged conduct cross an impermissible threshold.   While Title VII harassment law and the ADA is not a civility code, it is also not a license for daily mistreat employees based on perceived physical infirmities.

CLP's request for an affirmative defense was also granted.

There are two parts to the affirmative defense for employers when (1) it exercises reasonable care to prevent harassing behavior, such as by promulgating an anti-harassment policy that it distributes to its employees and (2) the employee fails to take advantage of preventative or corrective opportunities that the employer offers. Citation omitted.  33.

The affirmative defense should be rejected for any or all of the following reasons: 1) Holmes the manager that harassed Cooper made the factually contested decision to terminate Cooper 2) Cooper followed the sexual harassment policy (which covers other forms of harassment) and complained to the manager and area manager 3) the manager in question received no training on any disability issues.

---

33  Doc 26-pg. 19

9

CP was not entitled to summary judgment based on affirmative defense.

## LEGAL ARGUMENT

A. <u>Verbal Abuse Based on a Perceived Disability Violates the Americans with Disabilities Act</u>

The Court concluded, "…that complained-of-conduct, while cruel and offensive, was not sufficiently severe or pervasive that it affected Cooper's employment.   Accordingly, summary judgment is due to be granted." Doc 26, pg. 19.   Cooper concedes that he worked through the name calling. "Yeah. I mean words can't—words don't really hurt you. I 've never known a word to hurt you." Doc. 17-3, pg.16

However, Cooper was distressed about being ridiculed about his visually apparent eye infirmity and then was sent home when he protested the treatment.

"I asked her, you know, I said Spanada, could you please stop calling me   -- I was like saying everybody in here you know I'm cockeyed, you know, stop calling me by that name.   And if you don't like what I say, stop calling me by that name. And if you don't like what I say, you can go home.   Take your ass home.   She made me clock out. I clocked out.   I mean, she's the boss, I can't not do what she say. But like I said, some people use power, you know – they don't use it for the greatest good." Cooper pg. 116.

10

Clearly when the manager is observed by another employee informing Cooper "Get your cockeyed ass on it and cook the meat right." Get your cockeyed ass out of my store". 34 Or as Cooper testified, "you cockeyed ass, you need to work faster. You're too slow.   She's like: You can't see back there what wrong?"35  These were disparaging daily comments.   "It was always in reference to my eye" 36.

The case requires balancing the principle that Title VII (or the ADA) does not legislate a general civility code versus what crosses the boundary of acceptable treatment by a supervisor of employee.   Rather than absolve the company of all liability, the fact the Cooper went to work in spite of the mistreatment it, is recognition that people have to work and the prohibitions of harassment as the Supreme Court has held come into play before a nervous breakdown and covers harassment based on a violation of the Americans with Disabilities Act.37

The Supreme Court holds,

Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work **371 environment, even one that

---

34 Doc. 17-6 pg. 92
35 Doc. 17-3, pg. 105, lines 14-20.
36 Doc 17-3, pg. 6 lines 12-13
37 https://www.eeoc.gov/policy/docs/harassment.html#_ftn13    See also Flowers v. S. Reg'l Physician Servs. Inc., 247 F.3d 229, 232 (5th Cir. 2001) citing "Silk v. City of Chicago, 194 F.3d 788, 803 (7th Cir.1999); Walton v. Mental Health Ass'n, 168 F.3d 661, 666 (3d Cir.1999) ("This framework indicates that a cause of action for harassment exists under the ADA."); Miranda v. Wis. Power & Light Co., 91 F.3d 1011, 1017 (7th Cir.1996) ("Such a claim [of a hostile work environment under the ADA] would seem to arise under the general prohibition against discrimination with respect to terms or conditions of employment contained in § 12112(a).");

does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality. The appalling conduct alleged in *Meritor,* and the reference in that case to environments " 'so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers,' " *id.,* at 66, 106 S.Ct., at 2405, quoting *Rogers v. EEOC,* 454 F.2d 234, 238 (CA5 1971), cert. denied, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972), merely present some especially egregious examples of harassment.

Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S. Ct. 367, 370-71, 126 L. Ed. 2d 295 (1993)

Cooper's lazy eye was the point of departure for Holmes' daily  harassment, and it clearly bothered Cooper enough to lose pay when he was sent home after protesting the treatment. Making comments about Cooper being slow suggests that Holmes could have tied Cooper's eye to how Holmes perceived Cooper's ability to do the job.

The Supreme Court standard is whether the conduct violates what an objectively reasonable person would tolerate in the American place.   Furthermore, the "severe or pervasive" element of Cooper's claim does not require a finding that his job performance declined as a result of the harassment.   In Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1277 (11th Cir.2002), the Eleventh Circuit, explained:

12

"[t]he Supreme Court has cautioned that harassment need not be shown to be so extreme that it produces tangible effects on job performance in order to be actionable. Thus, having established the frequency, severity, and humiliating nature of the conduct, **[the plaintiff]'s failure to establish convincingly how [the harasser's] conduct interfered with his duties is not fatal to his hostile environment claim**, given the totality of the circumstances." (internal citation omitted and emphasis added).

Cooper testified that he could do his job in the face of Holmes' continuous harassing comments.

A reasonable person in Cooper's positon working the grill subjected to brazen attacks on his perceived physical visual infirmity could find that the other factors comprising the totality of the circumstances (i.e., the frequency or severity of the comments and the humiliating nature of Holmes' alleged misconduct) created a hostile or abusive workplace based on Cooper's perceived disability.

The Court applied too high of a standard and dismiss the action without a trial.

## **Affirmative Defense Unavailable**

The Court also granted defendant's summary judgment motion based on the *Faragher/Ellerth* affirmative defense to hostile environment claims. The defense remains out of reach when the harassment results in a tangible employment action.

13

Cooper testified that as a result of protesting the being verbally put down based on the his eye, he was sent home for at least the day.

More importantly following being sent home, Cooper was terminated when a factual dispute arose whether he had permission to be off from work.   See Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1281 (11th Cir. 2003)("A discharge is unquestionably a tangible employment decision.") In the Walton case, the defense remained available, the discharge reason was factually undisputed: she failed to return from disability leave.

In this case, there is a hotly disputed factual issue whether or not Cooper had been approved by Holmes for leave.   Holmes says no, Cooper says, leave was requested, in writing, and approved.38   The factual dispute should not resolved in the defendant's favor without a trial.

When the defense is allowed, the Supreme Court outlined what must be shown:

The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the

---

38  Cooper dep. Doc. 17-3, pg. 23, lines 5-10.

defense. And while proof that an employee failed to fulfill the corresponding
obligation of reasonable care to avoid harm is not limited to showing any
unreasonable failure to use any complaint procedure provided by the employer, a
demonstration of such failure will normally suffice to satisfy the employer's burden
under the second element of the defense.

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270, 141 L.
Ed. 2d 633 (1998)

The failure to train Holmes about anything regarding about disabilities or

disability discrimination precludes an affirmative defense. When asked about any

disability training, Holmes responded, "Not nothing with no disabilities, no".39.

According to Catherine Houston, CLP's Human Resourse Director, the company

operates 21 McDonald's restaurants in central Alabama and Holmes had been

given training on disability issues.40

Houston's declaration creates another factual dispute as to whether the

employer was exercising reasonable care to prevent harassment.   Having a

prohibition of discrimination/harassment policy is not enough when the relevant

decision makers deny receipt of any training outside of the sexual harassment

context.   While the Corporate Human Resource director recalls the training but the

store's general manager draws a blank is worrisome for the employees who report

---

39 Holmes dep.Doc 17-6 pg. 40.
40 Catherine Houston Dec. 17-1, pg.1, ¶2, pg. 3, ¶12 but also see Holmes' testimony that race and age
discrimination were unaddressed in any company conducted training sessions . Holmes Doc, 17-6, pg, 16.

to Ms. Holmes. When asked about training, Holmes responded, "Not nothing with no disabilities, no." 41

Finally, the defense is unavailable where Cooper followed the policy to stop the complained of conduct.   The sexual harassment policy says first to confront the harasser.  42   Cooper did that and was sent home.

Cooper then reported the conduct to Monica Love the district manager. The disputed conduct did not cease.43   Within a few weeks Holmes terminated Cooper's employment for a reason that is factually disputed.   The Cooper case should not go out on summary judgment.

## CONCLUSION

For the reasons addressed herein, Cooper respectfully requests that the case be reversed and remanded for trial on all claims.

Respectfully Submitted,

*/s/Lee Winston*
Attorney for Plaintiff

**OF COUNSEL:**
WINSTON COOKS, LLC
2-20th Street North
Suite 1330

---

41  Holmes Dep. Doc 17-6, pg. 40 lines 18-23.
42  Doc. 17-5, pg. 35 Complaint Procedures ("It is in the employee's best interest to inform the harasser that the conduct is unwelcome and must stop".
43  Cooper Dep. Doc. 17-3, pg. 16, lines 3-10.

Birmingham, AL 35203
(205) 502-0970    Tel
(205) 278-5876    Fax


## CERTIFICATE OF TYPE-VOLUME COMPLIANCE

Counsel for Plaintiff-Appellee hereby certifies that this Brief complies with Fed.R. App. P. 32(a)(7)(B) and (C), in that it was prepared in Times New Roman, 14-pt. font using and the total word count, as determined by the word processing system used, is 3,768 words.

*/s/Lee Winston*
Lee Winston

Of Counsel

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served via the Court Electronic Filing System on all counsel registered to receive the filings in this matter.

E. Travis Ramey
K. Bryance Metheny
Amy K. Jordan
BURR & FORMAN, LLP
420 20th Street North, Suite 3400
Birmingham, AL. 35203

This 3rd Day of May 2016

s/Lee Winston

18